Lawrence E. Pecan, Esquire
Florida Bar No. 99086
In-House Counsel
Rialto Capital
790 NW 107 Avenue, Suite 400
Miami, Florida 33172
Lawrence.Pecan@rialtocapital.com

(Counsel for Appellant)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:16-cv-62900-BB

RES-FL FIVE, LLC

    Appellant,

DELANOR ULYSSE, and
ALOURDES ULYSSE,

    Appellees.

_____/

USBC Case No.
15-25340-JKO

Chapter 13

=============================================

### APPELLANT'S INITIAL BRIEF

=============================================

## CERTIFICATE OF INTERESTED PERSONS

Secured Creditor, RES-FL FIVE, LLC (***"Appellant"***)
pursuant to Fed. R. Bankr. P 8012, certifies as follows:

1. The Federal Deposit Insurance Corporation and Lennar Corp.(LEN) hold indirect interests in the Appellant.

2. To the best of Appellant's knowledge, the only interested parties are:

   a. Delanor Ulysse

   b. Alourdes Ulysse

   c. RES-FL Five LLC

   d. Multibank 2009-1 RES-ADC Venture LLC

   e. Rialto Capital Advisors LLC

   f. Counsel to the parties.

Table of Contents

I.    JURISDICTIONAL STATEMENT ................................................................. 5

II.   STATEMENT OF THE ISSUES PRESENTED ............................................ 6

III.  STATEMENT OF THE CASE ...................................................................... 7

IV.   SUMMARY OF THE ARGUMENT .......................................................... 12

V.    ARGUMENT ............................................................................................... 15

   A.   A Chapter 13 Debtor May Not Redirect Disposable Income into Retirement Plan
   Contributions. ......................................................................................................... 15

   B.   Property of the Estate Does Not Include Amounts Withheld by an Employer From
   Wages for Payment as Contributions to Certain Employee Benefit Plans. ..................... 18

      1.   11 U.S.C. § 541 creates an estate composed of the debtor's interests on the date
      the petition is filed. ........................................................................................... 18

      2.   11 U.S.C. § 1306 is the only vehicle that brings post-petition property into the
      Chapter 13 estate. .............................................................................................. 21

      3.   11 U.S.C. § 541(b)(7) protects employer held withholdings from contributing to
      disposable income when estate property revests at confirmation. ................................ 24

   C.   11 U.S.C. § 541(b)(7)(ii) Demonstrates That Congress Did Not Contemplate
   Deducting Retirement Plan Contributions When Computing Disposable Income. ......... 26

   D.   The Bankruptcy Court erred in determining the plan was filed in good faith. ........ 28

      1.   The court may properly consider retirement plan contributions in determining
      good faith. .......................................................................................................... 28

      2.   A proper determination of the debtors' best efforts requires a comparison of the
      contributions to the retirement plan and to the bankruptcy plan. ............................... 31

VI.   CONCLUSION ........................................................................................... 34

## Table of Authorities

### Cases

*BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757 (1994). ......... 27

*FitzSimmons v. Walsh*, 725 F.2d 1208 (9th Cir. 1984) .................................. 22

*In re Egebjerg*, 574 F.3d 1045 (9th Cir. 2009) ................................................ 18

*In re Humphrey*, 165 B.R. 508 (Bankr. M.D. Fla. 1994) ............................... 30

*In re Kitchens*, 702 F.2d 885 (11th Cir. 1983) ............................................... 31

*In re Lennon*, 65 B.R. 130, (Bankr. N.D. Ga. 1986) ...................................... 21

*In re Lott,* No. 10-06061-TOM-13, 2011 Bankr. LEXIS 1983(U.S. Bankr. N.D. Ala. May 23, 2011) ................................................................................. 32

*In re Rimgale*, 669 F.2d 426 (7th Cir. 1982) .................................................. 30

*In re Shelton*, 370 B.R. 861 (Bankr. N.D. Ga. 2007) ........................... 29, 31, 32

*In re Smith*, No. 09-64409, 2010 Bankr. LEXIS 1942 (U.S. Bankr. N.D. Ohio June 15, 2010) .................................................................................... 33

*In re Thomas*, 883 F.2d 991 (11th Cir. 1989) ................................................. 24

*Owen v. Owen*, 500 U.S. 305, 111 S.Ct 1833 (1991)) ..................................... 19

*Parks v. Drummond (In re Parks)*, 475 B.R. 703 (B.A.P. 9th Cir. 2012)..... 25

*Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253 (11th Cir. 2013) .......................................................................... 29

*Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716 (2011) ............................ 17

*Schwab v. Reilly*, 130 S.Ct. 2652 (2011) ....................................................... 19

*Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687 (8th Cir. 1993).............. 24

*U.S. v. Whiting Pools Inc.*, 462 U.S. 198 (1983) ........................................... 18

### Statutes

11 U.S.C. § 101 ............................................................................................... 16

11 U.S.C. § 1306 .............................................................................. 22, 23, 24, 25

11 U.S.C. § 1325 ....................................................................... 15, 16, 17, 19, 29

11 U.S.C. § 541 ..................................... 18, 19, 20, 21, 22, 24, 26, 27, 28, 35

11 U.S.C. § 707 .............................................................. 16, 17, 18, 26, 27, 28, 35

28 U.S.C. § 1334 ................................................................................................. 5

28 U.S.C. § 158 ................................................................................................... 5

## I.   JURISDICTIONAL STATEMENT

This matter concerns the appeal of the entry by the Bankruptcy Court of a final order, the Order Confirming Plan, on November 22, 2016. The Bankruptcy Court had jurisdiction over such matter pursuant to 28 U.S.C. § 1334(a), as the consideration and confirmation of a chapter 13 plan arise under title 11 of the United States Code.

This Court has jurisdiction pursuant 28 U.S.C. § 158(a)(1), as the Appellant filed its Notice of Appeal in the Bankruptcy Court on the 14th day following the entry of the confirmation order in the Bankruptcy Court.

## II.   STATEMENT OF THE ISSUES PRESENTED

1. Whether upon *de novo* review, the Bankruptcy Court erred in determining that voluntary contributions to a tax deferred annuity could not contribute to the calculation of the debtors' projected disposable income pursuant to 11 U.S.C. § 1325(b)(2).

2. Whether upon *de novo* review, the Bankruptcy Court erred in determining that so long as not illegal, no amount of payment to a tax deferred annuity could be considered in determining good faith pursuant to 11 U.S.C. § 1325(a)(3) or (a)(7)

3. Whether the Bankruptcy Court abused its discretion in determining that the debtors filed their case and proposed their plan in good faith.

### III.   <u>STATEMENT OF THE CASE</u>

The facts of this case are straightforward and were not in dispute below. Appellees/Joint Debtors Delanor and Alourdes Ulysse are approaching the age of retirement, and while Mrs. Ulysse is not employed, Mr. Ulysse has deposited funds directly from his paycheck to his retirement account (a tax deferred annuity) since at least 2011. (R. 140). In 2011, Mr. Ulysse contributed $18,700 to his retirement account. (R. 133). Appellant obtained a final deficiency judgment against the Appellees on July 26, 2012 in the amount of $60,436.39 in the Circuit Court of the Fifth Judicial Circuit in and for Marion County, Florida. (R. 140). In 2012, Mr. Ulysse contributed $17,850.00 to his retirement account (R. 134). In 2013, following the entry of the judgment, Mr. Ulysse contributed $5,700.00 to his retirement account. (R. 135). In 2014, Mr. Ulysse contributed $12,100.00 to his retirement account (R. 136). Debtors filed for bankruptcy Chapter 13 protection on

August 25, 2015 (R. 4). In 2015, Mr. Ulysse *increased* his contribution to his retirement to $22,800. (R. 137).

On December 17, 2015, Appellant filed proof of claim No. 2-1 in the total amount of $75,530.72 with a secured claim of $4,259.44 and an unsecured claim in the amount of $71,271.28, which represents 96.67% of the general unsecured claims. (R. 140). This partially secured claim is attached to a motor vehicle worth $4,259.44 (the amount of the secured claim). *Id.* Appellees' plan proposed to pay general unsecured creditors a total of $12,117.20 over the five year life of the plan. *Id.* During that same time period, Mr. Ulysse proposed that he will contribute approximately $114,000 to his retirement account. (R. 141).

Generally speaking, chapter 13 debtors must contribute the entirety of their projected disposable income to payments under the plan during the applicable commitment period. Subject to a detailed statutory framework, the parties agree that such calculation is

determined on the basis of subtracting the debtors' reasonable expenses from their projected income.

The crux of the dispute between the parties centers on whether the contributions to the Appellees' tax deferred annuity may be deducted from their gross income in determining such a number. Among other issues (which are abandoned on appeal), the Appellant argued that the prospective contributions to a retirement plan may not be deducted from gross income. Appellant generally argued that some portion of the $114,000 must be paid into the bankruptcy plan (and ultimately the creditors) rather than paid into the Appellees' retirement account (ultimately for their own benefit).

The Appellees, however, argued that contributions to a tax deferred retirement plan are properly deducted from gross income in determining the projected disposable income, and ultimately the payment to creditors. Put another way, the Appellees argued that to the extent the debtors' income (before contribution) exceeded their

expenses, they may use such excess funds to fund a retirement plan (rather than their bankruptcy plan) so long as they do not exceed the limits set by the Internal Revenue Service.

Appellant's arguments on this issue were essentially that (1) Bankruptcy Code's definition of projected disposable income did not exclude prospective contributions to a retirement plan; and (2) that even if they were properly excluded, the facts of this case dictated that no plan could be confirmed as it violated the statutory requirement of good faith. By agreement of the parties, these two objections were prosecuted in separated contested matters (as the first would require no evidentiary hearing and the second would so require) in the interests of judicial economy.

Accordingly, the parties briefed the first issue via an objection to confirmation of the plan (R. 98) and the Debtors' response thereto (R.117).   After a hearing, the Court overruled the objection to the first issue, as reflected in an order entered on June 2, 2016 (R. 121).   The Court

concluded that 11 U.S.C. § 541(b)(7) dictates that "the Debtor's retirement contributions are not considered disposable income." (R. 123).

The parties then briefed the second issue via another objection (R.124). After another hearing, the Court overruled the objection on the second issue (R. 138). The Court held that, in determining the good faith of a retirement contribution, if "debtors are funding their retirement accounts with amounts that are legally allowable, then equity will not revisit those transfers on the basis of 'fairness.'" (R. 141).

The resolution of both objections resulted in a final order confirming the plan (R. 144) from which Appellant timely appealed.

## IV.  <u>SUMMARY OF THE ARGUMENT</u>

Appellant argues that the Appellees should not be able to confirm a bankruptcy plan and receive a discharge by contributing in excess of $110,000 to their own retirement accounts, while contributing only $12,117.20 to their unsecured creditors. In so arguing, Appellant submits that any monies available for contribution to a retirement plan are included in disposable income under 11 U.S.C. § 1325(b)(1).

Appellant argues that 11 U.S.C. § 541(b)(7) does not exclude post petition retirement contributions from the definition of projected disposable income. Instead, that subsection excludes the vesting of prepetition contributions from affecting any calculation of projected disposable income for plan purposes. This is consistent with the fact that §541 deals exclusively with prepetition property, whereas any postpetition property is dealt with in the chapter under which the case is filed—in this case 11 U.S.C. § 1306.

Such an interpretation is the only interpretation which would not render one or more of 11 U.S.C. § 707(b)(2)(A)(ii), 11 U.S.C. § 541(a)(6), 11 U.S.C. § 541(b)(7)(i), and/ or 11 U.S.C. § 541(b)(7)(ii) superfluous. If Congress had wanted to allow debtors to deduct retirement contributions, it would have allowed the deduction under 11 U.S.C. § 707(b)(2)(A)(ii).

Finally, in the alternative, Appellants argue that even if retirement contributions are properly deducted, they are still subject to a determination of good faith. Where as here, the Appellees had more than sufficient income to pay their creditors in full if they even reduced (rather than eliminated) their retirement contributions, a finding of bad faith is appropriate. This is especially true here, where the Appellees increased their contribution by more than $10,000 in the year of filing.

Notwithstanding the implication of retirement contributions elsewhere in the Bankruptcy Code, a good faith analysis is always still required under Eleventh

Circuit precedent. Thus, in spite of the Bankruptcy Court's determination that the retirement contributions were not included in projected disposable income, the Court erred by not considering the totality of the circumstances, including the proportions of contributions to the retirement and bankruptcy plans, prior to confirmation.

## V.   ARGUMENT

**A.**   **A Chapter 13 Debtor May Not Redirect Disposable Income into Retirement Plan Contributions.**

If an unsecured creditor objects to confirmation of a Chapter 13 Plan, the court may not confirm the Plan unless the Plan devotes of all of the debtor's disposable income to the Plan over the course of the applicable commitment period. 11 U.S.C. § 1325(b)(1).  Such disposable income is the product of current monthly income received by the debtor less amounts reasonably necessary to be expended:

> (A)   (i) for the maintenance or support of the debtor or a dependant of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>
> (ii) for charitable contributions . . . .

11 U.S.C. § 1325(b)(2).

Current monthly income is defined at 11 U.S.C. § 101(10A) as the average monthly income from all sources that the debtor receives during the six-month period ending on the last day of the calendar month immediately preceding the date of commencement of the case. Current

monthly income specifically excludes certain expenditures including benefits received under the Social Security Act, payments to victims of war crimes, and payments to victims of international terrorism. 11 U.S.C. § 101(10A)(B).

After calculating current monthly income, above-median income debtors (such as those in this case) are required to compute their disposable income according to the formula appearing at 11 U.S.C. § 1325(b)(2).  11 U.S.C. § 1325(b)(3) requires that above-median income debtors compute their disposable income by subtracting from their monthly income only those allowed expenditures under 11 U.S.C. § 707(b)(2).

11 U.S.C. § 707(b)(2)(A)(i), in turn, allows the debtor to deduct his monthly expenses according to the Local and National Standards. Additionally debtor may deduct:

1. actual monthly expenses for the continuation of actual expenses for the care and support of an elderly, chronically ill, or disabled household member. 11 U.S.C. § 707(b)(2)(A)(ii)(II); and

2. the debtor's actual monthly expenses for actual administrative expenses in a Chapter 13 Plan. 11 U.S.C. § 707(b)(2)(A)(ii)(III);and

3. actual expenses for a child less than 18 years of age to attend private or public school. 11 U.S.C. § 707(b)(2)(A)(ii)(IV); and

4. housing and utility expenses in excess of the allowed standard based on actual expenses. 11 U.S.C. § 707(b)(2)(A)(ii)(V).

In addition to those deductions allowed under §707(b)(2) (which are also deducted from the related "means test" required of chapter 7 debtors), the subclauses of the disposable income requirement specifically reference allowed deductions for certain expenses. 11 U.S.C. § 1325(b)(2). Thus, Congress specifically allows the additional deduction of amounts necessary to be expended for post-petition domestic support obligations and charitable contributions. *Id.*

In each instance, Congress has specifically stated what should be excluded from current monthly income or what would be an allowed expenditure in computing disposable income. Courts may consult the IRS Collection Financial Standards in interpreting the National and Local Standards. *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 726 (2011). "Congress provided, by reference to the IRS

Guidelines, specific guidance as to what qualifies as a necessary expense for the purposes of applying the test." *In re Egebjerg*, 574 F.3d 1045, 1052 (9th Cir. 2009). Neither the IRS guidelines nor the other allowed expenses in 11 U.S.C. § 707(b) authorize a deduction for retirement contributions as a necessary expenditure.

> **B.      Property of the Estate Does Not Include Amounts Withheld by an Employer From Wages for Payment as Contributions to Certain Employee Benefit Plans.**

> > *1.      11 U.S.C. § 541 creates an estate composed of the debtor's interests on the date the petition is filed.*

The commencement of a case under Title 11 creates an estate. 11 U.S.C. § 541. The estate comprises all of the legal or equitable interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a)(1). 11 U.S.C. § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the bankruptcy code. *U.S. v. Whiting Pools Inc.*, 462 U.S. 198, 208 (1983). The petition date is the relevant date for determining whether property is property of the estate.

*Owen v. Owen*, 500 U.S. 305, 314 n.6 111 S.Ct 1833, 114 L.Ed.2d 350 (1991)).

Certain property is withdrawn from the estate when it is claimed as exempt. *Schwab v. Reilly*, 130 S.Ct. 2652 (2011). Property of the estate includes proceeds, product, offspring, rents, or profits of or from property of the estate "except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Thus, as applied to the facts of the case at hand, the funds contributed to and held by the Appellees' retirement plans on the date the petition was filed were exempt and beyond the reach of the Trustee.

The property contained in the estate affects Chapter 13 debtors most frequently in measuring whether the Plan meets the requirements of the best interests of creditors test appearing at 11 U.S.C. § 1325(a)(4). In order to confirm a bankruptcy plan, the debtor must pay the unsecured creditors at least as much as they would receive in a hypothetical Chapter 7 case. 11 U.S.C. § 1325(a)(4).

11 U.S.C. § 541(b)(7) excludes certain employer withholdings from the estate. That section provides:

> Property of the estate does not include—
>
> (7)   any amount—
>
>> (A)   withheld by an employer from the wages of employees for payment as contributions—
>>
>>> (i)   to—
>>>
>>>> (I) an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
>>>>
>>>> (II) a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
>>>>
>>>> (III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>>>>
>>>> except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325 (b)(2); or

(ii)  to  a  health  insurance  plan
regulated by State law whether or not
subject to such title.

11 U.S.C. § 541(b)(7) protects amounts withheld by an
employer from the wages of the employee for contributions
to the employee's benefit and health insurance plans that
are not exempt property under 11 U.S.C. § 522. Thus, funds
withheld but not yet delivered to the employee sponsored
retirement plan or health insurance plan are protected from
the reach of the Trustee.

> 2.  *11 U.S.C. § 1306 is the only vehicle that
> brings post-petition property into the
> Chapter 13 estate.*

11 U.S.C. § 541(a)(6) provides that the property of the
estate includes proceeds, product, offspring, rents, or profits
of or from property of the estate "except such as are
earnings from services performed by an individual debtor
after the commencement of the case." Interests from post
filing services are expressly excluded from the estate. *In re
Lennon*, 65 B.R. 130, 132 n.2 (Bankr. N.D. Ga. 1986).
Congress knew how to override the general applicability of
11 U.S.C. § 541(a)(6) when it wanted to do so. Congress did

so by enacting 11 U.S.C. § 1306 which removes the earnings exception from Chapter 13 cases. . *FitzSimmons v. Walsh*, 725 F.2d. 1208, 1211 (9th Cir. 1984)

Property acquired by the Chapter 13 debtor post-petition is not controlled by 11 U.S.C. § 541(b)(7). 11 U.S.C. § 1306 adds to post-petition property of the estate that exists as of the commencement of the case. That section provides:

> (a)  Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1)  all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2)  earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

When it considered the difference between the two sections, the 6th Circuit Bankruptcy Appellate Panel reasoned that the difference was intentional. That court recognized:

> Notably, this section, which addresses property and earnings that come into existence after the debtor files a petition for relief does not exclude 401(k) contributions from property of the estate. Rather, 401(k) contributions are only excluded in § 541 which specifically applies to property in existence at the commencement of the case. Because Congress identified 401(k) contributions as excluded in § 541, but not in § 1306, the Panel concludes that the absence of any reference in § 1306 to 401(k) contributions was intentional.

*Burden v. Seafort (In re Seafort)*, 437 B.R. 204 (6th Cir B.A.P. 2010)

The only vehicle referencing post-petition bankruptcy earnings - and the employer withholdings from those earnings - would have been 11 U.S.C. § 1306. 11 U.S.C. § 1306(a)(2) specifically references the debtor's post-petition earnings. This court should extend the reasoning of *Seafort* to the case at hand.

This court should hold that the only section that brings post-petition property and earnings into the estate is 11 U.S.C. § 1306. Thus, the only section that could reference withholding from those earnings would be 11 U.S.C. § 1306.

> 3. *11 U.S.C. § 541(b)(7) protects employer held withholdings from contributing to disposable income when estate property revests at confirmation.*

The Chapter 13 estate continues to exist post-petition. *Sec. Bank of Marshalltown v. Neiman*, 1 F.3d 687, 688 (8th Cir. 1993). Property of the estate revests with the debtor upon Plan confirmation unless the debtor elects otherwise in the Plan. *In re Thomas*, 883 F.2d 991, 998 (11th Cir. 1989).

11 U.S.C. § 541(b)(7) prohibits this revesting of the debtor's interest in funds withheld by the employer from contributing to disposable income. The amounts withheld by the employer on the date of filing are not recoverable for purposes of the best interests of creditors test and, likewise, are not measured for purposes of the disposable income test.

This provision protects the debtor from having that amount counted twice when calculating disposable income.

"From here, it follows that 'such amount' referred to in the hanging paragraph of § 541(b)(7)(A) means that only prepetition contributions shall not constitute disposable income." *Parks v. Drummond (In re Parks)*, 475 B.R. 703, 708 (B.A.P. 9th Cir. 2012). Instead, "the term 'except that' in the hanging paragraph was designed simply to clarify that the voluntary retirement contributions excluded from property of the estate are not postpetition income to the debtor." *Id.*

Any contrary argument would render 11 U.S.C. § 1306 superfluous. The court should be hesitant to adopt an interpretation of a congressional enactment which renders another portion superfluous.

C.        **11 U.S.C. § 541(b)(7)(ii) Demonstrates That Congress Did Not Contemplate Deducting Retirement Plan Contributions When Computing Disposable Income.**

11 U.S.C. § 541(b)(7)(ii) assists in the interpretation of 11 U.S.C. § 541(b)(7)(i). That section states that any amount withheld by an employer from the wages of an employee for payment as contribution to a health insurance plan regulated by State law is not property of the estate. In BAPCPA, Congress also wrote 11 U.S.C. § 707(b)(2)(A)(ii)(I) which allows expenses to be deducted from current monthly income to "include reasonably necessary health insurance, disability insurance, and health savings account expenses for the debtor, the  spouse of the debtor, or the dependents of the debtor." Congress could have written an expense deduction for retirement plan contributions in the same fashion that it did for health insurance, but chose not to do so. That Congress specifically allowed the expenditure for health insurance under 11 U.S.C. § 707(b)(2)(A)(ii)(I), but not retirement plan withholdings, indicates that Congress

intended to treat retirement plan withholdings in a different fashion. Otherwise, the allowed expense deduction for health insurance under 11 U.S.C. § 707(b)(2)(A)(ii)(I) superfluous.

Had Congress wanted the amounts withheld by the employer referenced in 11 U.S.C. § 541(b)(7)(i) to be an allowed deduction when calculating disposable income, then the reference to health insurance under 11 U.S.C. § 541(b)(7)(ii) would have also stated that health insurance contributions would "not constitute disposable income." This court should interpret the statute to give meaning to every word. Where Congress includes particular language in one section of a statute, but omits it from another section of the same act, it is generally assumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion. *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761 (1994).

This court should interpret the statute to give effect to 11 U.S.C. § 707(b)(2)(A)(ii), 11 U.S.C. § 541(a)(6), 11

U.S.C. § 541(b)(7)(i), and 11 U.S.C. § 541(b)(7)(ii). If Congress had wanted to allow debtors to deduct retirement contributions from CMI, it would have allowed the deduction under 11 U.S.C. § 707(b)(2)(A)(ii) as it did with health insurance. This interpretation gives meaning to every word of the statute.

### D. The Bankruptcy Court erred in determining the plan was filed in good faith.

Even if retirement contributions were properly deducted from disposable income, the plan was still unconfirmable because the disparity between payments to themselves (under the retirement plan) vs payment to the unsecured creditors was so great (a factor of almost ten).

#### 1. *The court may properly consider retirement plan contributions in determining good faith.*

The Bankruptcy Court determined that since contributions were deducted from disposable income, the court could not "revisit" them in determining good faith, suggesting that would constitute an "equity end-around." Such a determination might have proven true if such an

objection was interposed in equity in an attempt to undermine the statute. That conclusion, however, is undermined by the inclusion of a good faith test *in the text of the applicable statute.* In the Eleventh circuit, good faith analyses are not trumped by other provisions in the statutory scheme. *Piazza v. Nueterra Healthcare Physical Therapy, LLC (In re Piazza)*, 719 F.3d 1253, 1268 (11th Cir. 2013). "[I]n the unique context of the Bankruptcy Code, general language intended to prevent abuse often receives its ordinary meaning notwithstanding more specific provisions." *Id.*

If "Congress removed certain streams of income from being considered disposable income by exemption or deduction, it does not necessarily follow that Congress intended to handicap the courts' good faith inquiries or unintentionally create a proverbial 'loophole.'" *In re Shelton*, 370 B.R. 861, 867 (Bankr. N.D. Ga. 2007).

11 U.S.C. § 1325(a) provides, in relevant part that

    (a) Except as provided in subsection (b), the
        court shall confirm a plan if—
        (3) the plan has been proposed in good
            faith and not by any means forbidden
            by law; . . .
        (7) the action of the debtor in filing the
            petition was in good faith;

The Bankruptcy Court's holding suggests that because the retirement contributions are implicated in an objection under §1325(b), then the court cannot or should consider the disparity in retirement plan contributions versus bankruptcy plan contributions in its analysis under §1325(a).

Without an objection, §1325(b) is never implicated, but the court still has an <u>independent</u> duty to consider §1325(a), including good faith under §1325(a)(3) and (a)(7). *In re Rimgale*, 669 F.2d 426, 431 (7th Cir. 1982). In considering whether or not the filing of a bankruptcy petition was done in good faith, "the totality of the circumstances must be considered." *In re Humphrey*, 165 B.R. 508, 510-11 (Bankr. M.D. Fla. 1994). The Eleventh Circuit holds that "a bankruptcy court must consider . . . the

debtor's degree of effort. . . ." *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983). The determination of "effort" focuses on the percentage of the unsecured claims paid, and is essentially a "meaningful or substantial repayment" test. *Id.*at 887.

> 2. *A proper determination of the debtors' best efforts requires a comparison of the contributions to the retirement plan and to the bankruptcy plan.*

"A grossly disproportionate plan invites scrutiny." *Shelton*, 370 B.R. at 868.

> A plan that proposes to pay [*de minimis*] to creditors when a debtor could pay substantially more is not a plan proposed in good faith. Neither the history nor the text of § 541(b)(7). suggests Congress sought to diminish the requirement of good faith; in fact, the apparent intent was the opposite. The BAPCPA addition of § 1325(a)(7) requiring that the petition be filed in good faith in addition to the existing requirement that the plan be proposed in good faith indicates the opposite. The totality-of-the-circumstances test established by *Kitchens* provides ample support for the conclusion that good faith remains a requirement for a plan to be confirmed.

*Id.* 869. In *Shelton,* the court determined that the debtor had the ability to pay unsecured creditors if the retirement contributions were reduced and thus denied confirmation. *Id.*

Similarly, in *In re Lott,* No. 10-06061-TOM-13, 2011 Bankr. LEXIS 1983, at *24 (U.S. Bankr. N.D. Ala. May 23, 2011), the court compared the 22% dividend with contributions of $78 and $158 to retirement and bankruptcy plans, respectively. The court found that the "Debtor is in a position to repay her unsecured nonpriority creditors in a much more substantial, meaningful manner if her 401(k) contributions are redirected to her Chapter 13 plan payments." *Id.* at 25. Thus, the held that the plan must not be confirmed because the "Debtor's minimal repayment to her unsecured creditors [fails to] satisfy[y] the 'substantiality of repayment to unsecured creditors' and 'degree of effort' *Kitchens* factors. *Id.*

In determining bad faith, courts also consider the amount by which an increase in retirement plan contributions decreases the dividend to unsecured creditors. *In re Smith*, No. 09-64409, 2010 Bankr. LEXIS 1942, at *8 (U.S. Bankr. N.D. Ohio June 15, 2010) (finding bad faith where "the increase reduced the distribution to unsecured creditors by more than half.")

The record below demonstrates that (1) the debtors will contribute approximately ten times the amount to their retirement plans than they will to their unsecured creditors; (2) the increase in retirement contributions in the year prior to filing ($10,700)[1] extrapolated over five years reduced the distribution by $53,500 (approximately 71%). The Bankruptcy Court declined to consider these disparities, instead determining good faith solely on the basis that it was good for the debtors' retirement prospects and not prohibited by law. Such a determination effectively permits debtors to chapter 13 debtors to choose to pay

---

[1] $22,800 (in 2015) - $12,100.00 (in 2014) = $10,700.

themselves rather than their creditors, contravening the *Kitchens* good-faith dictates.

## VI.   CONCLUSION

The Appellees should not be able to confirm a bankruptcy plan and receive a discharge by contributing in excess of $110,000 to their own retirement accounts, while contributing only $12,117.20 to their unsecured creditors. The extraordinary retirement plan contributions are instead included in disposable income under 11 U.S.C. § 1325(b)(1).

11 U.S.C. § 541(b)(7) does not exclude post petition retirement contributions from the definition of projected disposable income. Instead, that subsection excludes the vesting of prepetition contributions from affecting any calculation of projected disposable income for plan purposes. This is consistent with the fact that §541 deals exclusively with prepetition property, whereas any postpetition property is dealt with in the chapter under which the case is filed—in this case 11 U.S.C. § 1306.

Such an interpretation is the only interpretation which would not render one or more of 11 U.S.C. § 707(b)(2)(A)(ii), 11 U.S.C. § 541(a)(6), 11 U.S.C. § 541(b)(7)(i), and/ or 11 U.S.C. § 541(b)(7)(ii) superfluous. If Congress had wanted to allow debtors to deduct retirement contributions, it would have allowed the deduction under 11 U.S.C. § 707(b)(2)(A)(ii). This Court should adopt the interpretation which gives meaning to each section.

Finally, even if retirement contributions are properly deducted, they are still subject to a determination of good faith.  Where as here, the Appellees had more than sufficient income to pay their creditors in full if they even reduced (rather than eliminated) their retirement contributions, a finding of bad faith is appropriate. This is especially true here, where the Appellees increased their contribution by more than $10,000 in the year of filing. Clearly, the Appellees proposed the plan in bad faith in order to escape paying creditors which they could have (but chose not to) pay.

Notwithstanding the implication of retirement contributions elsewhere in the Bankruptcy Code, a good faith analysis is always still required under Eleventh Circuit precedent. Thus, in spite of the Bankruptcy Court's determination that the retirement contributions were not properly included in projected disposable income, the Court erred by not considering the totality of the circumstances, including the proportions of contributions to the retirement and bankruptcy plans, prior to confirmation.

This Court should reverse the Bankruptcy Court, hold that retirement contributions are properly included in projected disposable income, and remand the case for further proceedings to determine the good faith of the retirement contributions.

Respectfully submitted,

/s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire
Florida Bar No. 99086
In-House Counsel
Rialto Capital
790 NW 107 Avenue, Suite 400
Miami, Florida 33172
Lawrence.Pecan@rialtocapital.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was delivered to counsel for the Appellees by delivery of notices of electronic filing.

/s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 8015 in that it contains

5,367 words.

/s/ Lawrence E.  Pecan
Lawrence E. Pecan, Esquire