UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 16-cv-62900-BLOOM/Valle**

RESFL FIVE, LLC,

      Appellant,

v.

DELANOR ULYSSE,
and ALOURDES ULYSSE,

      Appellees.

_____/

## OPINION

**THIS CAUSE** is before the Court upon Appellant RESFL FIVE, LLC's ("Appellant")

Notice of Appeal of the Bankruptcy Court's Order Confirming the Second Amended Chapter 13

Plan filed by Appellees, ECF No. [1]. The Court has carefully reviewed the parties' Briefs, the

record on appeal, the applicable law, and is otherwise fully advised. For the reasons that follow,

the Order Confirming the Second Amended Chapter 13 Plan is **AFFIRMED**.

## I. BACKGROUND

Appellees Delanor and Alourdes Ulysse ("Appellees") are an elderly couple.[1]  Mr.

Ulysse is approaching retirement age while Mrs. Ulysse is not employed. Since at least 2011,

Mr. Ulysse has been depositing funds from his paycheck directly into his retirement account – a

tax-deferred annuity. Between the years 2011 and 2015, Mr. Ulysse made the following

voluntary contributions to his retirement account: $18,700 (2011), $17,850 (2012), $5,700

(2013), $12,100 (2014), and $22,800 (2015). On July 26, 2012, Appellant obtained a final

deficiency judgment against Appellees in the amount of $60,436.39.

---

[1] The underlying facts are undisputed and are taken from the parties' briefs. *See* ECF No. [15] at 7-11; ECF No.
[19] at 5.

On August 25, 2015, Appellees filed a petition under Chapter 13 of the United States Bankruptcy Code (the "Code") before the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"). During the bankruptcy proceedings, Appellant filed a proof of claim in the total amount of $75,530.72, which consisted of a secured claim in the amount of $4,259.44 and an unsecured claim in the amount of $71,271.28. Appellees later filed a proposed Chapter 13 Plan in which, over the span of five years, they would pay the general unsecured creditors, including Appellant, a total of $12,117.20. Also during this five-year period, the Plan proposed that Mr. Ulysse would contribute approximately $1,900 per month to his retirement account for a total of approximately $114,000. In the Bankruptcy Court below, Appellant asserted two objections to the Chapter 13 Plan. Appellant first objected on the ground that prospective contributions to a retirement account may not be deducted from Appellees' gross income when calculating their projected disposable income during the five-year Plan period. *See* ECF No. [11-1] at 100-105; ECF No. [12]. Following a hearing on the first objection, the Bankruptcy Court issued a written opinion overruling the objection and finding that Appellees' "retirement contributions to their TDA [tax-deferred annuity] shall not be included in the calculation of disposable income available for the repayment of the creditors." *See* ECF No. [11-1] at 123.

Appellant then asserted its second objection to the Chapter 13 Plan, arguing that Appellees' proposal to fund Mr. Ulysse's retirement plan in the amount of $114,000, yet only repaying creditors $12,117.20, violated the good faith requirement of 11 U.S.C. § 1325(a)(3) and (a)(7). *Id.* at 126-33. Following a hearing on the objection, *see* ECF No. [13], the Bankruptcy Court issued a written opinion finding that "[if] debtors are funding their retirement accounts with amounts that are legally allowable, then equity will not revisit those transfers on the basis of

'fairness.'" *See* ECF No. [11-1] at 143-45. Ultimately, the Bankruptcy Court concluded that "there is no bad faith inherently attached to Debtor's funding of their retirement accounts" as the pattern of contributions "appears to reveal Mr. Ulysse's earnest intentions to save for retirement while balancing the costs of everyday life." *Id.* at 145. After overruling both of Appellant's objections, the Bankruptcy Court issued its Order confirming Appellees' proposed Chapter 13 Plan. *See* ECF No. [1] at 3-5. This appeal timely followed. *Id.* at 1-2.

On appeal, Appellant presents three issues for this Court's consideration: (1) whether the Bankruptcy Court erred in determining that voluntary contributions to a tax-deferred annuity could not contribute to the calculation of the debtors' projected disposable income pursuant to 11 U.S.C. § 1325(b)(2); (2) whether the Bankruptcy Court erred in finding that no amount of payment to a tax-deferred annuity could be considered in determining good faith pursuant to 11 U.S.C. § 1325(a)(3) or (a)(7) as long as the contributions are not illegal; and (3) whether the Bankruptcy Court abused its discretion in determining that the debtors filed their case and proposed their Chapter 13 Plan in good faith. *See* ECF No. [11-2].

## II.   STANDARD OF REVIEW

When a district court considers an appeal from an order of the bankruptcy court, it must review all conclusions of law using a *de novo* review standard. *See White v. Waage*, 440 B.R. 563, 565 (M.D. Fla. 2010) (citing *In Re Celotex Corp.*, 232 B.R. 484, 486 (M.D. Fla. 1998)). Findings of fact, on the other hand, are reviewed under a clearly erroneous standard. *Id.* When deciding mixed questions of law and fact, the *de novo* standard applies. *Id.* (citing *In Re Cox*, 493 F.3d 1336, 1340 n. 9 (11th Cir. 2007)). A lower court's finding of fact will be clearly erroneous "when the reviewing court on the entire record is left with the definite and firm

conviction that a mistake has been made." *Id.* (citing *Gen. Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997)).

When deciding whether a debtor has proposed a Chapter 13 Plan in good faith, the underlying findings of fact are reviewable under the clearly erroneous standard. *Id.* (citing *In Re Saylors*, 869 F.2d 1434, 1438 (11th Cir. 1989)). Using this standard, the district court, as the reviewing court, "may not reverse simply because it takes a different view or would have decided the case differently." *Id.* However, the district court "may consider documents and objective evidence which contradict a witness' story, or take notice that a story is internally inconsistent or so facially implausible that a reasonable fact finder would not credit it." *Id.* (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 574-75 (1985)). Through this lens, the Court considers the issues on appeal.

## III.   DISCUSSION

### a. Voluntary contributions to a tax-deferred annuity do not constitute disposable income under 11 U.S.C. § 1325(b)(2).

Appellant asks the Court to determine whether voluntary contributions to a tax-deferred annuity constitute disposable income under § 1325(b)(2). This question has been the source of considerable debate with no clear consensus among the bankruptcy courts throughout the United States. The United States Court of Appeals for the Eleventh Circuit has yet to consider and decide this issue. For that reason, the Court has surveyed and considered nationwide case law on the subject, which indicates there are three primary schools of thought. The first originated from *In re Johnson*, 346 B.R. 256 (Bankr. S.D. Ga. 2006) and constitutes the majority view. *See In re Cantu*, 553 B.R. 565, 572 (Bankr. E.D. Va. 2016). Here, the Bankruptcy Court followed the *In re Johnson* line of cases, concluding that § 541(b)(7) allows for the deduction of voluntary contributions to a tax-deferred annuity from the computation of disposable income as long as the

plan was proposed in good faith. *Id.* The second line of cases, which constitute the minority view, hold that debtors may not deduct their voluntary contributions to a tax-deferred annuity. *Id.* (citing *In re Seafort*, 669 F.3d 662, 674-75 (6th Cir. 2012); *In re McCullers*, 451 B.R. 498, 503-05 (Bankr. N.D. Cal. 2011); *In re Prigge*, 441 B.R. 667, 672-78 (Bankr. D. Mont. 2010)). The third line of cases holds that debtors may continue to make voluntary contributions post-petition as long as they are consistent with the history of contributions made on a pre-petition basis. *Id.* (citing *In re Seafort*, 437 B.R. 204 (6th Cir. B.A.P. 2010), *aff'd*, 669 F.3d 662 (6th Cir. 2012)).

### i. The Code

Before analyzing the three views, the Court must first consider the framework of the applicable Code provisions. Section 1325(b) of the Code provides that a debtor must either pay all allowed claims in full or the Chapter 13 plan must devote "all of the debtor's projected disposable income" to the plan if the trustee or the holder of an unsecured claim objects, as is the case here. *See* 11 U.S.C. § 1325(b)(1)(B). Above-median debtors, such as Appellees, must measure their disposable income using the means test found in §§ 1325(b)(2) and (3) and 707(b) of the Code.[2] *See* 11 U.S.C. § 1325(b)(2)-(3), 707(b). Section 541 defines what constitutes the "property" of the bankruptcy estate for all chapters of the Code. *In re Cantu*, 553 B.R. at 570. In a Chapter 13 case, a debtor's post-petition wages form part of the property of the estate pursuant to 11 U.S.C. § 1306(a)(2). *Id.* Section 1306 broadens what is included within the estate's "property" in Chapter 13 cases by including all property acquired and all earnings for

---

[2] Section 707(b) refers to the debtor's "current monthly income," which the Code defines as "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period" preceding the bankruptcy filing. 11 U.S.C. § 101(10A).

services performed by the debtor on a post-petition basis. *Id.* (quoting *Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013)).

In 2005, Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which added the provisions at issue to the Code. *See Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, Pub. L. No. 109-8, 119 Stat. 23 (2005). Specifically, Congress added § 1322(f) to the Code, which excludes from the debtor's disposable income calculation any amounts required to pay off loans from a qualified retirement plan. 11 U.S.C. § 133(f). The BAPCPA also added § 541(b)(7), which, in relevant part, excludes from the property of the estate:

> **(7)** any amount—
>
> > **(A)** withheld by an employer from the wages of employees for payment as contributions—
> >
> > > **(i)** to—
> > >
> > > > **(I)** an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 or under an employee benefit plan which is a governmental plan under section 414(d) of the Internal Revenue Code of 1986;
> > > >
> > > > **(II)** a deferred compensation plan under section 457 of the Internal Revenue Code of 1986; or
> > > >
> > > > **(III)** a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
>
> *except that such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2).*

11 U.S.C. § 541(b)(7) (emphasis added). The meaning and application of the "except that" paragraph, commonly referred to as the "hanging paragraph," has led to considerable debate among bankruptcy courts as further explained below and is the subject of the first issue on appeal. With this statutory framework in mind, the Court will analyze each line of cases – *In re*

*Prigge*, *In re Seafort*, and *In re Johnson* – to determine whether voluntary contributions to a tax-deferred annuity are included in the calculation of disposable income.

### ii. *In re Prigge*

Starting with the bankruptcy court opinions of *In re Prigge, In re McCullers* and the Sixth Circuit's opinion in *In re Seafort*, these cases hold that debtors may not make post-petition voluntary contributions to their retirement plan. Appellant urges the Court to adopt this minority view. The bankruptcy court in *Prigge* analyzed whether voluntary contributions to a 401(k) plan are excluded from the debtor's disposable income as a necessary expense under § 1325(b) or § 707(b)(2). *In re Prigge*, 441 B.R. at 677-78. Without an in-depth analysis of § 541(b)(7), the bankruptcy court stated in a footnote that this provision of the Code "'broadly excludes from 'property of the estate' funds 'withheld by an employer from the wages of employees' as contributions to specified types of employee-benefit plans, deferred compensation plans and tax-deferred annuity plans'" and "'seems intended to protect amounts withheld by employers from employees that are in the employer's hands at the time of filing bankruptcy, prior to remission of the funds to the plan.'" *Id.* at 677 n.5 (quoting 5 COLLIER ON BANKRUPTCY, ¶541.22C[1] (15th ed. rev.)).

Subsequent to *Prigge*, the Ninth Circuit's Bankruptcy Appellate Panel followed this view when deciding *In re Parks*, 475 B.R. 703 (9th Cir. B.A.P. 2012). The *Parks* bankruptcy court, following *Prigge*, sustained the trustee's objection to the Chapter 13 Plan wherein the debtors would continue making voluntary payments to their 401(k) plans. *See In re Parks*, 475 B.R. at 705. The appellate panel affirmed the decision, concluding that the words "such amount" in § 541(b)(7)(A) applied to *pre*-petition income. *Id.* at 708. Finding that nothing within Chapter 13 excludes voluntary retirement contributions from disposable income while § 1322(f) specifically

excludes the repayment of 401(k) loans from disposable income, the *Parks* court determined "it is likely 'that Congress did not intend to treat voluntary 401(k) contributions like 401(k) loan repayments, because it did not similarly exclude them from 'disposable income' within Chapter 13 itself." *Id.* (quoting *In re Seafort*, 669 F.3d at 672). *See also In re McCullers*, 451 B.R. at 504-505 (concluding that "Congress's use of the words 'except that' [in the hanging paragraph] is entirely consistent with the *Prigge* decision" and "[s]o long as [the] Trustee or an unsecured creditor objects, this above-median income Debtor may not make voluntary post-petition contributions to his retirement plan").

It appears that the only circuit court to address this issue to date has been the Sixth Circuit. *See In re Seafort*, 669 F.3d at 663. The issue in *Seafort*, which is slightly different than the issue presented here, was whether income that becomes available after the debtors fully repay their 401(k) loans becomes "projected disposable income" that must be paid to unsecured creditors or whether the debtors can exclude that income from their disposable income and use it to make voluntary contributions to a tax-deferred annuity. *Id.* at 663. In its opinion, the Sixth Circuit recognized that the BAPCPA contained legislative history indicating it was intended to protect retirement funds as this protection did not exist under pre-BAPCPA law, specifically referring to the addition of §§ 1322(f) and 541(b)(7). *Id.* at 674. However, the circuit court was more focused on the "BAPCPA's 'core purpose' [of] ensur[ing] that debtors devote their full disposable income to repaying creditors and maximizing creditor recoveries." *Id.* Following the rationale of *Prigge* and *McCullers*, the Sixth Circuit ultimately held that "Congress intended to exclude from disposable income and projected disposable income available for unsecured creditors only voluntary retirement contributions already in existence at the time the petition is filed." *Id.*

### iii. *In re Seafort (Bankruptcy Appellate Panel Decision)*

The second view stems from the Bankruptcy Appellate Panel's decision in *In re Seafort* finding that, so long as the debtors were making comparable contributions to their 401(k) prior to filing the bankruptcy petition, the debtors may continue making those contributions on a post-petition basis. *See In re Seafort*, 437 B.R. at 210. In the opinion, the panel focused its analysis on Congress's placement of the exclusion of voluntary contributions within § 541, as opposed to § 1306, and concluded that "§ 541(b)(7) does not exclude income which becomes available *post-petition* in order to start making contributions to a 401(k) plan." *Id.* The panel reasoned that this subsection's placement within § 541 limited its application to pre-petition contributions. *Id.* Supporting its decision with the BAPCPA's legislative history, the panel stated:

> A primary objective of BAPCPA, insofar as consumer bankruptcy was concerned, was to "ensure that debtors repay creditors the maximum they can afford." H.R.Rep. No. 109–31, pt. 1, at 2 (2005), U.S.Code Cong. & Admin. News 2005, pp. 88, 89. BAPCPA also included various consumer protection reforms.
>
> . . .
>
> In regard to retirement savings, Congress clearly intended to strike a balance between protecting debtors' ability to save for their retirement and requiring that debtors pay their creditors the maximum amount they can afford to pay. *This balance is best achieved by permitting debtors who are making contributions to a Qualified Plan at the time their case is filed to continue making contributions, while requiring debtors who are not making contributions at the time a case is filed to commit post-petition income which becomes available to the repayment of creditors rather than their own retirement plan.* To conclude otherwise encourages the improvident behavior that BAPCPA sought to discourage. If the bankruptcy court is affirmed, debtors who were not contributing to their tax qualified plan and borrowing against their own retirement savings may file bankruptcy, repay themselves, and, once the loan is repaid, start contributing again to their own retirement savings. Allowing debtors to do so would tip the delicate balance struck by BAPCPA impermissibly in favor of debtors. On the other hand, allowing debtors who are making contributions at the commencement of a case to continue making those contributions furthers the goal of encouraging retirement savings. Limiting these protections to contributions in place at the time debtors file their petitions also protects the goal of ensuring that debtors pay creditors the maximum amount debtors can afford to pay

*Id.* (emphasis added).

Appellant relies, in part, on the bankruptcy court's *Seafort* opinion for the proposition that "a debtor's ability to exclude property acquired post-petition from the claims of creditors is not controlled by 11 U.S.C. § 541" and asks the Court to gloss over the above-quoted language as "pure dicta." *See* ECF No. [20] at 5-6. Far from dicta, several other bankruptcy courts have followed and applied this rationale in determining that voluntary contributions made as of the date the petition is filed do not constitute disposable income, allowing debtors to make such payments throughout the life of the Chapter 13 Plan. *See In re Read*, 515 B.R. 586, 590 (Bankr. E.D. Wis. 2014); *In re Jensen*, 496 B.R. 615, 621 (Bankr. D. Utah 2013); *In re Noll*, No. 10-35209-svk, 2010 WL 5336916, at *1 (Bankr. E.D. Wis. Dec. 21, 2010).

### iv. In re Johnson

The final view, upon which the Bankruptcy Court below relied, originated in *In Re Johnson*. In *Johnson*, the bankruptcy court determined that "'any amount' that is either 'withheld by' or 'received by' a debtor's employer for qualifying EBPs, deferred compensation plans, tax-deferred annuities, or state-law-regulated health insurance plans 'shall not constitute disposable income,' as defined in section 1325(b)(2)." *In re Johnson*, 346 B.R. at 263. Finding that "Congress has placed retirement contributions outside the purview of a Chapter 13 plan," the *Johnson* court concluded that, as long as a debtor's contributions were within legally allowed limits, § 541(b)(7) excludes "any amount" from the "disposable income" computation. *Id.* Since *Johnson*, the majority of bankruptcy courts have followed this view. *See In re Lott,* No. 10-06061-TOM-13, 2011 WL 1981710, at *6 (Bankr. N.D. Ala. May 23, 2011)( "Section 541(b)(7), which was adopted as part of the BAPCPA amendments, provides that employee contributions to certain qualified savings plans are exempt from inclusion in property of the estate and disposable

income."); *In re Smith,* No. 09-64409, 2010 WL 2400065, at *2 (Bankr. N.D. Ohio June 15, 2010) ("Thus, the debtors' contributions to 401(k) plans are excluded from the debtors' disposable income.); *In re Garrett*, No. 07-3997-3F3, 2008 WL 6049236, at *1 (Bank. M.D. Fla. Jan. 18, 2008) ("Neither 401k contributions nor 401k loan repayments are included in a Chapter 13 debtor's disposable income, without regard to whether the debtor is above or below the median income"); *In re Shelton*, 370 B.R. 861, 865-66 (N.D. Ga. 2007) ("The [BAPCPA's] goal to expand retirement savings is clear and the result is reasonable. Accordingly, amounts withheld from wages for contribution to a qualified retirement plan are not included in § 1325(b)(1)'s calculation of projected disposable income"); *In re Njuguna*, 357 B.R. 689, 691 (Bank. D.N.H. 2006) ("Congress sought to protect 401k contributions by excluding them from the bankruptcy estate and providing that neither 401k contributions nor 401k loan payments shall constitute disposable income.").

Also following *Johnson*, the bankruptcy court in *In Re Vanlandingham* closely analyzed the statutory framework and language in the Code. *In Re Vanlandingham*, 516 B.R. 628, 631-638 (Bankr. D. Kan. 2014). Within its statutory interpretation analysis, the bankruptcy court explained that the hanging paragraph of § 541(b)(7) does not make a distinction between pre-petition and post-petition voluntary contributions. *Id.* at 635. It further explained that a conclusion holding that "only pre-petition retirement withholdings from earnings can be excluded from the property of a chapter 13 estate seems inconsistent with the forward-and-backward-reaching scope of § 1306," which provides that a Chapter 13 estate includes § 541 property *as of* and *after* the commencement of the petition as well as post-petition earnings. *Id.* Continuing its analysis, the bankruptcy court concluded that it would be more consistent to read the hanging paragraph as applying to post-petition contributions in that the § 541(b)(7) exclusion

from property of the estate refers to "any amount withheld," but does not contain a temporal limitation. *Id.* Similarly, the bankruptcy court noted that § 1306's incorporation of § 541 was not limited to § 541(a) but also included all of § 541(b), *including the hanging paragraph of § 541(b)(7). Id.* Going one step further and analyzing the legislative history of the BAPCPA, the bankruptcy court explained that Congress "sought to protect debtors' retirement resources and to encourage them to voluntarily save for retirement." *Id.* at 636. Based on this analysis, it concluded that *Johnson*'s interpretation of the hanging paragraph was "most consistent with promoting the legislative policy of protecting and encouraging retirement savings" as "[t]here is no reason to protect post-petition 401(k) loan repayments, but not post-petition 401(k) contributions in chapter 13." *Id.*

Applying a similar analysis, the bankruptcy court in *In re Drapeau* squarely addressed the minority view's reliance on the placement of the hanging paragraph within § 541, instead of Chapter 13. *See In re Drapeau*, 485 B.R. 29, 36 (Bankr. D. Mass. 2013). It stated:

> Section 1306 incorporates *all* of § 541 into the definition of estate property in the Chapter 13 case, including those exceptions detailed in subsection (b). And because § 541(b)(7) expressly excludes voluntary contributions from the bankruptcy estate, there is no need for § 1306 to contain a duplicative provision excepting such contributions. The exception becomes applicable with the wholesale incorporation of § 541.

*Id.* Using this rationale, the bankruptcy court adopted the majority approach, finding that voluntary contributions do not constitute disposable income. *Id.*

### v. This Court's View

On appeal, Appellant asks the Court to adopt the minority view and find that the Bankruptcy Court below erred by holding that voluntary contributions to a tax-deferred annuity cannot be included in the disposable income calculation. However, this Court is not persuaded by the rationale of *Prigge*, *McCullers, Parks* or the Sixth Circuit's opinion in *Seafort*. This view

misplaces the focus of its analysis on § 541(b)(7)'s location outside of Chapter 13, leading those courts to conclude that the hanging paragraph applies solely to pre-petition contributions. This Court's interpretation and understanding of the Code, however, is consistent with the analysis of *Johnson, Vanlandingham*, *Drapeau*, and *Cantu*. The Court, therefore, rejects the minority view. Not only does § 541(b)(7) not draw a temporal distinction or otherwise limit a debtor's ability to make contributions on a pre-petition or post-petition basis, but there is also nothing in the text of the statute that would evince such a Congressional intent. Further support for the majority position lies in the fact that *all* of § 541 – including the exceptions of § 541(b)(7) – are subsumed within § 1306. For that simple reason, there would be no need for Congress to include a duplicative provision within § 1306 that would exempt voluntary contributions on a post-petition basis. *See In re Drapeau*, 485 B.R. at 36.

For these same reasons, the Court also rejects the second view expressed in the bankruptcy appellate panel's opinion in *Seafort that* § 541(b)(7) does not exclude income which becomes available *post*-petition in order to start making contributions to a 401(k) plan. This places undue significance on the placement of § 541(b)(7) within § 541. Additionally, the Code contains no provisions supporting *Seafort*'s conclusion that those debtors making pre-petition contributions to a retirement account may continue making them post-petition while debtors who made no such pre-petition contributions are barred from doing so post-petition. *See In re Cantu*, 553 B.R. at 577 ("The Sixth Circuit's B.A.P.'s requirement that post-petition contributions be comparable to the debtor's historic, pre-petition contributions appears to be grounded more in policy concerns than in the text of Section 541(b)(7)").

In sum, this Court finds that *Johnson* and its progeny are consistent with the statutory framework and the Congressional intent behind the addition of § 541(b)(7) to the Code. For that

reason, the Court concludes that the Appellees' voluntary contributions to a tax-deferred annuity during the five-year span of their Chapter 13 Plan are not disposable income under § 1325(b)(2).

### b. Appellees' Chapter 13 Plan satisfies the good faith requirements of § 1325(a)(3) and (a)(7).

Addressing the second and third issues on appeal, the Court must next consider whether the proposed Chapter 13 plan satisfies the good faith requirements of § 1325(a)(3) and (a)(7). "[G]ood faith is an independent requirement for confirmation of a Chapter 13 plan." *See In re Cantu*, 553 B.R. at 577 (citing 11 U.S.C. § 1325(a)(3)). As a preliminary matter, the Court agrees with Appellant that the Bankruptcy Court must consider whether the Chapter 13 Plan was confirmed in good faith, including consideration of the voluntary retirement contributions. In reaching this conclusion, the Court recognizes that "[t]he twin aims of bankruptcy are to provide equitable distribution of assets for creditors, and to provide a fresh start for a debtor." *In re Shelton,* 370 B.R. 861, 868 (Bankr. N.D. Ga. 2007)(citing *Burlingham v. Crouse,* 228 U.S. 459, 472–73, (1913)). This Court's conclusion that voluntary contributions to a tax-deferred annuity do not constitute disposable income does not shield such contributions from the good-faith inquiry. Indeed, "[n]either the history nor the text of § 541(b)(7) suggests Congress sought to diminish the requirement of good faith; in fact, the apparent intent was the opposite." *Id.* at 869. This is because the BAPCPA's addition of § 1325(a)(7), which required the debtors to file their petition in good faith, coupled with the existing § 1325(a)(3), which required the plan to be proposed in good faith, evidence that good faith is still a necessary element to the confirmation of any Chapter 13 plan. *Id.*

As part of the good faith analysis, the Court may consider factors such as the debtor's age in relation to his anticipated retirement to determine whether it would be unreasonable to reduce his or her retirement contributions during the length of the plan. *See In re Shelton*, 370 B.R. at

868-69; *see also In re Smith*, 2010 WL 2400065 at *3 (stating that a relevant factor to consider when determining whether voluntary contributions to a retirement plan are proposed in good faith is the financial planning justification for any post-petition increase in contributions). Here, it is undisputed that Mr. Ulysse had been contributing to a tax-deferred annuity since at least 2011 and that those pre-petition contributions were significant. He made the following contributions: $18,700 (2011), $17,850 (2012), $5,700 (2013), $12,100 (2014), and $22,800 (2015). This record reveals a pre-petition pattern of preparation for retirement. Significantly, it is also undisputed that Mr. Ulysse is nearing his retirement age. There is nothing unusual about an individual making contributions or increasing the amount of such contributions as retirement age draws closer, such as is the case here. Equity dictates that a debtor who is on the verge of retirement should be allowed to continue making voluntary contributions to a retirement account. Otherwise, the debtor would be deprived of the ability to obtain a fresh start. *See In re Shelton*, 370 B.R. at 869. Based on the record, the Bankruptcy Court's underlying finding that the Chapter 13 Plan was proposed in good faith was not clearly erroneous. *See White*, 440 B.R. at 565 (stating that a bankruptcy court's finding of good faith is reviewed for clear error). The Bankruptcy Court ultimately concluded that Appellees' pattern of contributions to a retirement plan did not "evince bad faith, but appears to reveal Mr. Ulysse's earnest intentions to save for retirement while balancing the costs of everyday life." *See* ECF No. [11-1] at 145. The Court agrees with this conclusion.

## IV.    CONCLUSION

For the reasons stated herein, it is **ORDERED AND ADJUDGED** that the Order Confirming the Second Amended Chapter 13 Plan, ECF No. [1], is **AFFIRMED**.

**DONE AND ORDERED** in Miami, Florida, this 29th day of September, 2017.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record